UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE
_____

ERIC TURNER and TAYLOR
TURNER,

       **Plaintiffs,**

v.                                          **Docket No. 3:17-CV-00381-PLR-CCS**
                                              **JURY DEMANDED**

**BERKSHIRE HATHAWAY HOMESTATE**
**INSURANCE COMPANY,**

       **Defendant.**
_____

## FIRST AMENDED COMPLAINT
_____

       COME NOW the Plaintiffs, Eric Turner and Taylor Turner, by and through counsel, and submit the following for their First Amended Complaint against Berkshire Hathaway Homestate Insurance Company:

### PARTIES AND JURISDICTION

       1.    Eric Turner and Taylor Turner (hereafter "Plaintiffs") are residents of Knoxville, Knox County, Tennessee. At all times relevant hereto, Plaintiffs were the owners of the real estate and commercial structures located at 4201 and 4124-4128 Martin Mill Pike, Knoxville, Tennessee (the "Insured Premises").

       2.    Defendant, Berkshire Hathaway Homestate Insurance Company (hereafter "Defendant") is an insurance company engaged in the insurance business in the State of Tennessee, including Knox County. Upon information and belief, Defendant's principal office is located in Omaha, Nebraska.

3. This First Amended Complaint originates as the result of a wind storm that substantially damaged the structures located on the Insured Premises.

## FACTS

4. At all times relevant hereto, Plaintiffs were the insureds pursuant to an insurance contract whereby Defendant agreed to insure the structures located on the Insured Premises against property damage (the "Policy"). The Policy's term was July 20, 2016 to July 20, 2017.

5. At all times relevant hereto, the Insured Premises consisted of commercial structures and surrounding area in which Plaintiffs operated a mixed martial arts training facility.

6. The Policy provided replacement cost value insurance coverage for loss or damage to the buildings/structures located on the Insured Premises.

7. Pursuant to the Policy, Plaintiffs paid an annual premium to Defendant in exchange for insurance coverage. Plaintiffs paid the required premiums at all times relevant to this First Amended Complaint.

8. On or about December 4, 2016, a severe windstorm damaged the roof of the Insured Premises, resulting in storm caused openings and water damage to the interior of the buildings. Additionally, a power outage in the area caused a sump pump system on the roof to become inoperable, resulting in water infiltration. The aforementioned damage to the roof and interior shall hereafter be referred to as the "Loss".

9. Plaintiffs promptly reported the Loss to Defendant.

10. Plaintiffs fulfilled all of the duties after the Loss that were imposed upon them by the Policy to the satisfaction of Defendant.

11. As it relates to the Loss, there is no applicable exclusion. The Loss is a compensable claim under the Policy.

12. Despite the fact that Plaintiffs have fulfilled all duties imposed upon them by Defendant and are at no fault in this matter, Defendant has wrongfully refused to pay Plaintiffs' claim in full.

13. Defendant has accepted the Loss as a compensable claim under the Policy, but refuses to pay the full amount owed under the Policy. Specifically, after the Loss, Defendant determined that the amount of the Loss covered by the Policy was $1,281.15, which was less than the Policy's deductible. Defendant has made no payments to Plaintiffs as a result of the Loss.

14. Defendant's failure and refusal to pay Plaintiffs the amounts owed to them for the Loss is without justification.

15. Defendant's failure and refusal to pay the money and benefits due and owing Plaintiffs under the Policy has caused Plaintiffs to seek legal counsel and to initiate this First Amended Complaint to recover the insurance proceeds to which they are entitled.

## CAUSES OF ACTION

### Count 1 – Breach of Contract

16. The allegations contained in all paragraphs of this First Amended Complaint are incorporated herein by reference as if set forth verbatim.

17. Defendant's promise, by and through the Policy, to insure the buildings located on the Insured Premises against property damage was a binding contract, and is supported by valid consideration.

18. Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiffs in the maximum amount allowed by the Policy for the Loss, plus consequential damages. Specifically, Defendant's breach of contract includes the following, without

3
Case 3:17-cv-00381-PLR-CCS   Document 10   Filed 10/09/17   Page 3 of 10   PageID #: 34

limitation: (a) Defendant's failure and refusal to pay the amounts owed to Plaintiffs for the damage to the buildings located on the Insured Premises caused by the Loss; and (b) Defendant's failure and refusal to pay such other amounts to Plaintiffs as may be required by the Policy.

19. As a result of Defendant's breach of contract, Plaintiffs have sustained substantial compensable losses for the amounts claimed under the Policy and additional consequential damages that were reasonably foreseeable.

20. Defendant is liable to Plaintiffs for their losses.

21. Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Defendant Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiffs' claim when liability was admitted; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Plaintiffs' claim for insurance proceeds; (3) unjustly refused and/or failed to pay Plaintiffs' claim for its own financial preservation with no reasonable or justifiable basis; (4) unjustly refused and/or failed to assist the Plaintiffs after the Loss; (5) failed to treat Plaintiffs' interests with equal regard to its own; (6) failed and refused to pay even damage undisputedly caused by the Loss that was covered by the Policy; (7) failed to timely and accurately scope and estimate the Loss; (8) knew the true facts that the covered damage to the Insured Premises was greater than that estimated by Defendant; (9) lied to Plaintiffs by advising that the covered damages totaled only $1,281.15; (9) refused to provide Plaintiffs with the reports of Defendant's adjusters and experts concerning the Loss and forced Plaintiffs to institute this action to obtain such report; and (10) such other facts and circumstances as alleged in this lawsuit and/or to be determined during discovery and which

will be shown at trial. Defendant knew, or reasonably should have known, that Plaintiffs were justifiably relying on the money and benefits due them under the terms of the Policy. Nevertheless, acting with conscious disregard for Plaintiffs' rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiffs, Defendant consciously ignored and denied payment of Plaintiffs' valid claim and withheld monies and benefits rightfully due Plaintiffs. Plaintiffs seek, and are entitled to, punitive damages.

**Count 2 - Reformation**

22. The allegations contained in all paragraphs of this First Amended Complaint are incorporated herein by reference as if set forth verbatim.

23. Reformation of contract is an equitable remedy applicable to insurance contracts where there is a mutual mistake of the parties. Plaintiffs invoke this Court's equitable powers and seek reformation of the Policy issued by Defendant to Plaintiffs.

24. The remedy of reformation is necessary to carry out the true intent of the parties. In obtaining insurance coverage, Plaintiffs were promised "all risk" replacement cost value coverage pursuant to the terms of which all risks of direct physical loss or damage were covered except as limited or excluded by the Policy. Instead of providing Plaintiffs "all-risk" coverage, Defendant issued Plaintiffs a "Basic" policy, pursuant to which only loss or damage caused by certain named perils (including windstorm) are covered.

25. The parties' intent that Plaintiffs would be provided "all risk" coverage is evidenced by two Certificates of Insurance provided to Plaintiffs on July 18, 2016, prior to their purchase of the Insured Premises on July 20, 2016. Specifically, Defendant's agent, Drew Miles Insurance Agency, Inc., provided Plaintiffs with Certificates of Insurance for the Insured

Premises which indicated that "Special" (as opposed to "Basic") coverage would be provided by the Policy. In reliance on the representations in the Certificate of Insurance, Plaintiffs paid the premium shown on the Certificate of Insurance, which was also reflected on Plaintiffs' HUD-1 for their purchase of the Insured Premises. "Special" is a term of art in the insurance industry which references the Covered Causes of Loss, and means that the policy will be an "all risk" policy that covers all risk of direct physical loss or damaged except as limited or excluded by the terms of the Policy.

26. Plaintiffs sought and paid for the "Special" coverage form and Defendant, by and through its agent, promised such coverage in writing in the form of the Certificates of Insurance. Accordingly, Defendant is estopped from denying that the "Special" coverage form applies to the Loss.

27. Pursuant to Tenn. Code Ann. § 56-6-115(b), Drew Miles Insurance Agency, Inc. was an authorized agent for Defendant as it relates to any controversies arising from any policy issued to Plaintiffs. As a matter of law, Defendant is estopped to deny policy liability on a matter arising out of the negligence or mistake of its agent, and if either Plaintiffs or Defendant has to suffer from Drew Miles Insurance Agency, Inc.'s mistake, it must be Defendant. It was the duty of Defendant and its agents/representatives to exercise due diligence to supply Plaintiffs with an insurance policy that would affect the intended purpose, i.e., to provide Plaintiffs with replacement cost value coverage with a "Special" covered cause of loss form. Damage caused by Defendant's mistakes in drafting or issuing the Policy rests on Defendant, not Plaintiffs. When an insurance company or its agent delivers to the insured a policy which is known, or should be known, to be defective, such conduct is a representation that the policy is valid and effective for the purpose intended. *Allstate v. Tarrant*, 363 S.W.2d 508, 519-521 (Tenn. 2012).

28. There was a meeting of the minds that Defendant would issue Plaintiffs an insurance policy with a "Special" covered cause of loss form, but instead a "Basic" form was mistakenly issued by Defendant. As a result, the Policy does not express what was really intended by the parties. There was a mistake in the issuance, quoting, and/or drafting of the Policy which rendered its terms different than those agreed upon by the parties. Accordingly, the Policy should be reformed to include the "Special" covered cause of loss form as opposed to the "Basic" covered caused of loss form.

**Count 3 – Statutory Bad Faith**

29. The allegations contained in all paragraphs of this First Amended Complaint are incorporated herein by reference as if set forth verbatim.

30. Defendant's refusal and failure to pay the amounts contractually owed to Plaintiffs is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for the Loss as required pursuant to the Policy for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked.

26. The bad faith of Defendant is evidenced by the fact that, at all times material hereto, Defendant knew, or reasonably should have known that Plaintiffs were justifiably relying on the money and benefits due them under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth in paragraph 27 below and 21 above. Nevertheless, acting with conscious disregard for Plaintiffs' rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiffs, Defendant consciously refused to pay in full Plaintiffs' valid claim and withheld monies and benefits rightfully due to Plaintiffs.

27. Defendant's bad faith is evidenced by all of the facts and allegations set forth above in this First Amended Complaint, together with the following:

a. Defendant's intentional failure to fully inform Plaintiffs of their rights and obligations under the Policy;

b. Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claim when liability was reasonably clear;

c. Defendant's intentional refusal to pay Plaintiffs' claim in full and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

d. Defendant's intentional refusal to fully investigate Plaintiffs' claim and to obtain all available information before alleging that it had no further obligations to Plaintiffs;

e. Defendant's failure to promptly provide Plaintiffs with a reasonable and accurate explanation for its refusal to pay their claim in full;

f. Defendant's intentional failure to properly adjust Plaintiffs' claim and to pay Plaintiffs fully for their losses;

g. Defendant's intentional failure to pay all amounts due and owing to Plaintiffs under the Policy with no reasonable or justifiable basis; and

h. Defendant's unjustified refusal to pay Plaintiffs' claim for its own financial preservation.

28. In so acting, Defendant intended to and did injure Plaintiffs in order to protect its own financial interests, and should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

WHEREFORE, as a result of the foregoing, Plaintiffs would respectfully request that this Honorable Court award a judgment to Plaintiffs as follows:

A. For compensatory damages to Plaintiffs against Defendant not to exceed $500,000;

B. For punitive damages against Defendant not to exceed $1,000,000.00;

C. For reformation of the Policy as set forth in Count 2 above;

D. For the twenty-five percent (25%) statutory bad faith penalty pursuant to Tenn. Code Ann. § 56-7-105.

E. For all costs incurred by Plaintiffs as a result of this action;

F. For pre- and post-judgment interest; and

G. For such other further and general relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a jury.

Respectfully submitted,

GILBERT McWHERTER
SCOTT & BOBBITT, PLC


s/Clinton H. Scott
CLINTON H. SCOTT #23008
cscott@gilbertfirm.com
101 N. Highland Ave.
Jackson, TN 38301
(731) 664-1340

J. BRANDON McWHERTER #21600
bmcwherter@gilbertfirm.com
341 Cool Springs Blvd, Suite 230
Franklin, TN 37067
(615) 354-1144

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

      I, the undersigned, do hereby certify that a true and exact copy of this Frist Amended Complaint has been mailed electronically via the Court's electronic filing system, to all counsel of record on this the 9th day of October, 2017:

Brent S. Usery
Marc O. Dedman
Spicer Rudstrom, PLLC
414 Union Street
Bank of America Plaza, Suite 1700
Nashville, TN 37219
mod@spicerfirm.com
bsu@spicerfirm.com

                                          s/ Clinton H. Scott